ADAM GORDON
United States Attorney
P. KEVIN MOKHTARI
Assistant U.S. Attorney
California Bar No. 253283
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
Tel:  (619) 546-8402
Email:  kevin.mokhtari@usdoj.gov

Attorneys for the Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AUGUSTO JEAN CARLO<br>            CASTILLO-HERNANDEZ,<br>      aka "Metal,"<br>      aka "Joker,"<br><br>Defendant. | Case No.: 20-CR-2242-DMS<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date:  July 18, 2025<br>Time:  9:00 a.m. |

The UNITED STATES OF AMERICA, by and through its counsel, Adam Gordon, United States Attorney, and P. Kevin Mokhtari, Assistant U.S. Attorney, files its Sentencing Memorandum.

## I.     STATEMENT

Defendant Augusto Jean Carlo Castillo-Hernandez was identified as part of a multi-year proactive investigation led by Homeland Security Investigations and the United States Attorney's Office in the Southern District of California targeting high-level cocaine traffickers operating in northwest Guatemala and their suppliers. The investigation offered one of the most comprehensive views to date of the inner workings of cocaine trafficking in Guatemala, which sits between South American cocaine producers and Mexico-based drug cartels. As part of the investigation, high-level cocaine traffickers were targeted in a

massive probe involving multiple countries, multiple law enforcement agencies around the United States, and a number of federal districts. During the investigation, Castillo-Hernandez was identified as a high-level lieutenant in a cocaine trafficking and money laundering organization that operated in northwest Guatemala called Los Huistas.

The investigation revealed that Castillo-Hernandez coordinated the distribution ton quantities of cocaine.  Indeed, as part of his plea agreement, Castillo-Hernandez admitted that between at least 2017 and July 28, 2020, he was involved in the distribution of at least 2,000 kilograms (over 4,400 pounds) of cocaine. This cocaine was then further distributed to drug trafficking organizations in Mexico and ultimately to the United States.

In July 2020, Castillo-Hernandez was indicted on charges of conspiracy to distribute cocaine intended for unlawful importation into the United States, in violation of 21 U.S.C. §§ 959, 960 and 963. He was arrested on August 31, 2021 in Guatemala pursuant to an extradition request from the United States. Guatemala granted his extradition, and on February 10, 2022, he was extradited to the United States. One month after Castillo-Hernandez and three others were extradited from Guatemala, on March 2022, the U.S. Department of Treasury, Office of Foreign Assets Control ("OFAC") issued treasury sanctions against the Los Huistas Drug Trafficking Organization ("DTO") and some of its leaders, including an individual for whom Castillo-Hernandez directly worked.

Castillo-Hernandez was no bit player in the conspiracy. Instead, the investigation revealed that he personally coordinated and managed the cocaine distribution activity and did so regularly over the multi-year investigation.  As Castillo-Hernandez admits in his plea agreement, Castillo-Hernandez participated in the distribution of multi-ton quantities of cocaine in Guatemala on behalf of a drug trafficking organization (Los Huistas) based in Huehuetenango, Guatemala.  Specifically, defendant had sources of cocaine supply who operated in Guatemala, which includes two defendants pending sentencing before this court.   Castillo-Hernandez would negotiate and oversee the transactions with these suppliers.  Once a transaction was agreed upon, Castillo-Hernandez would receive the cocaine from the sources of supply at one of his properties in Guatemala.

After receiving cocaine from a supplier, Castillo-Hernandez would then oversee the transportation and distribution of cocaine to co-conspirators operating near the Guatemala-Mexico border in Huehuetenango, Guatemala.  These co-conspirators would in turn smuggle the cocaine into Mexico and ultimately into the United States.

## II.    SENTENCING GUIDELINES

The base offense level is 38 based on the 2,000 kilograms of cocaine.  As the PSR recognizes, Castillo-Hernandez had an aggravated role in the criminal activity. Under USSG § 3B1.1(b), where a defendant was a manager or supervisor (but not otherwise an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, the defendant receives a three-level upward adjustment for aggravated role.  Plainly, the offense involved five or more participants.  Indeed, there are more than five participants identified in the extensive wiretap materials.  As such, the question is whether Castillo-Hernandez was an organizer/leader, which results in a four-level upward adjustment as recommended in the PSR, or a manager/supervisor, which results in a three-level upward role adjustment under USSG § 3B1.1.  On balance, the government recommends the three-level role adjustment for Castillo-Hernandez.

"[T]he term 'organizer' in § 3B1.1(c) applies to defendants who have the ability and influence necessary to coordinate the activities of others to achieve the desired result, whether or not they have a superior rank in a criminal hierarchy." *United States v. Doe*, 778 F.3d 814, 824 (9th Cir. 2015). "[O]nly 'some control,' which could include 'organizational responsibility,' is necessary to apply the enhancement." *United States v. Vinge*, 85 F.4th 1285, 1289 (9th Cir. 2023) (quoting *United States v. Kabir*, 51 F.4th 820, 826 (9th Cir. 2022)).  An aggravated role enhancement may be appropriate as long the defendant "managed at least one participant." *United States v. Egge*, 223 F.3d 1128, 1132 (9th Cir. 2000) (applying three-level aggravated role enhancement).

In *United States v. Durazo-Miranda*, No. 21-CR-2642-DMS, 2024 WL 615572, at *1 (9th Cir. Feb. 14, 2024), the Ninth Circuit held that a defendant who coordinated multiple participants in the procurement and delivery of methamphetamine and directed a

coconspirator to provide methamphetamine in exchange for an undercover agent's payment qualified as an "organizer" under 3B1.1(c). As a result, the Ninth Circuit affirmed this Court's imposition of a two-level aggravated role adjustment (in a conspiracy involving less than 5 people). And here, the evidence supporting an aggravated role enhancement is *significantly* greater than that present in *Durazo-Miranda*.

Castillo-Hernandez managed and supervised multiple members of the conspiracy, coordinated smuggling ventures on behalf of the DTO, and had significant organizational responsibility. As an initial matter, Castillo-Hernandez admits in his plea agreement that he participated in the distribution of multi-ton quantities of cocaine on behalf of the DTO. The wiretap evidence demonstrating Castillo-Hernandez's participation in the cocaine distribution conspiracy is extensive.

Castillo-Hernandez also admitted that he would "negotiate and **oversee** the transactions with these suppliers." Plea Ag. at 4 (emphasis added). After receiving the cocaine, Castillo-Hernandez also admitted he "would **oversee** the transportation and distribution of cocaine to co-conspirators operating near the Guatemala-Mexico border…." *Id* (emphasis added). By overseeing the transportation and distribution of cocaine as well as the transactions to procure cocaine, all of which necessarily involved other members of the conspiracy, Castillo-Hernandez had a manager/organizer role in the conspiracy.

Castillo-Hernandez's admissions are also heavily corroborated by the extensive, yearslong wiretap intercepts. For example, on May 16, 2018, agents intercepted communications between Castillo-Hernandez, aka "Metal," and a worker by the moniker "Rambutan." After identifying Rambutan was in a specific location, Castillo-Hernandez instructed Rambutan that he did not need to stay in the location for very long so long as the people there saw Rambutan and would be familiar with him when "there's something to do [cocaine to distribute] in the following week." Castillo-Hernandez stressed to his worker, "That way they get used to seeing you." Castillo-Hernandez also instructed Rambutan to let him (Castillo-Hernandez) know if Rambutan saw anything "odd or something big [law enforcement/military vehicle] coming in."

On other occasions, Castillo-Hernandez called on Rambutan to act as a scout near the border with Mexico. For example, on May 25, 2018, Castillo-Hernandez inquired about the "entrance." Rambutan reported back immediately, "I just went to the border and I left my cell at home here. It's tough at the entrance. It's inundated inside. There's 3 jeeps; one is at the bridge, another one down below Degni [location] and the other one is at the border." After getting the report, Castillo-Hernandez instructed Rambutan to "stay near the entrance" to continue to report law enforcement activity near the border. Rambutan further reported, "And one of the new ones [new law enforcement units/vehicles] that I told you about is just going around in circles." Castillo-Hernandez instructed Rambutan, "Okay, let them."

Later that day, Rambutan reported about the law enforcement, "No brother, those guys are not leaving today." Rambutan further reported, "He says they have taken 30 cars [cocaine loads] from Mosh." Notably, Mosh is a known moniker for Axel Bladimir Montejo Saenz (charged in 18CR4701-DMS), who is an OFAC-sanctioned member of Los Huistas.[1] After giving his report, Rambutan then asked his boss, Castillo-Hernandez, to re-up his cellular data plan: "If you can please recharge my internet tomorrow because it will finish at 8:00 and I don't have a cent." Castillo-Hernandez confirmed. These patterns of communications continued throughout the wiretap.

In another example, on August 21, 2018, agents intercepted communications between Castillo-Hernandez, aka "Joker" and an associate by the moniker "Nomas." During the conversation, Castillo-Hernandez instructed Nomas to go to the border and to meet with one of his (Castillo-Hernandez's) workers to receive a cocaine load. Castillo-Hernandez specifically instructed Nomas to take two others to "check them [cocaine] out." Castillo-Hernandez also instructed Nomas to let him (Castillo-Hernandez) know as soon

---

[1] *See* DOJ Press Release, Guatemalan National Indicted on International Cocaine Trafficking, available at https://www.justice.gov/usao-sdca/pr/guatemalan-national-indicted-international-cocaine-trafficking; *see also* U.S. Department of Treasury Press Release, available at https://home.treasury.gov/news/press-releases/jy0666.

as he received the cocaine to confirm its delivery.  Nomas referred to an individual working for Castillo-Hernandez by the moniker "Coneja."

Later that day, Nomas confirmed that he was "at the ranch already, sir." And Nomas further confirmed they would "check them [cocaine bricks] around 9:00 am, sir."  When there were issues with checking the quality of the cocaine right away, Castillo-Hernandez pressed Nomas to check out the cocaine right away: "Can't you check them out?  You know how the people from there [Mexico] like them [cocaine]."  Nomas responded, "Yes sir, I will check it out right now."  Unfortunately, after checking the quality of the cocaine, Nomas responded that he did not want the cocaine.  Castillo-Hernandez immediately relayed the negative cocaine review to his co-conspirators and suppliers, Jorge and Fabio Campos-Oliva (charged separately in Case Nos. 20CR2240-DMS and 20CR2241-DMS).

Approximately one week later, on August 28, 2018, Castillo-Hernandez reached out to his worker Rambutan.  After inquiring where Rambutan was located, Castillo-Hernandez ordered Rambutan to go to Coneja's house: "Go over to Coneja's house. … There's some fuckers [law enforcement] standing at the border.  Go over there to his house." Castillo-Hernandez further ordered his associate to conduct surveillance of suspected law enforcement near the border:  "And go look, on foot from far away, without making noise." A few minutes later, Rambutan confirmed the individuals had left the area and were headed to a new location.

These examples are emblematic and not exhaustive.  They demonstrate Castillo-Hernandez managed multiple other participants in the conspiracy, including workers in charge of scouting law enforcement, providing security, and meeting with purchasers of cocaine.  Because Castillo-Hernandez was a manager/supervisor in a conspiracy that involved five or more participants (and was otherwise extensive), a three-level aggravated role should be applied.

While Castillo-Hernandez has no criminal history, he does not qualify as a zero-point offender because of the aggravated role.  This results in an adjusted offense level of 41.  Castillo-Hernandez has accepted responsibility by pleading guilty. After applying a

three-level downward adjustment for acceptance of responsibility, the total offense level is 38. Castillo-Hernandez has a criminal history score of 0 and is in criminal history category I. The guidelines before departures are 235-293 months.

Per the plea agreement, Castillo-Hernandez agreed to a full appellate waiver and expeditiously resolved this case. The government therefore recommends a two-level departure under 5K2.0. This is warranted given the complexities of this wiretap investigation and to ensure finality in this case. This results in an adjusted offense level of 36 and resulting guidelines range of 188 to 235 months.

The guidelines make an important point. An aggravated role increase reflects the fact that "persons who exercise a supervisory or managerial role in the commission of an offense tend to profit more from it." USSG § 3B1.1, comment (backg'd). As the Sentencing Commission has found, such persons also "present a greater danger to the public and/or are more likely to recidivate." *Id.* That Castillo-Hernandez was working closely with family and other close associates further increases the risk of recidivism. Because of these factors, the government has considered and recommends against any further downward variance.

## III. CONCLUSION

Based on the foregoing, the government recommends the Court sentence Castillo-Hernandez to the low-end of the guidelines followed by 5 years' supervised release, no fine, and a $100 special assessment.

DATED: July 16, 2025

Respectfully submitted,

ADAM GORDON
United States Attorney

*s/P. Kevin Mokhtari*
P. KEVIN MOKHTARI
Assistant U.S. Attorney